# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 20 2019, 9:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jessica L. Hoover
Law Office of Jessica L. Hoover, LLC
Remington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

I N  T H E
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of Parental Rights of:

I.M. *(Minor Child)*

and

B.S. *(Mother)*,

*Appellant-Respondent,*

v.

The Indiana Department of Child Services (DCS),

*Appellee-Petitioner.*

February 20, 2019

Court of Appeals Case No.
18A-JT-1878

Appeal from the Jasper Circuit Court

The Honorable John D. Potter, Judge

Trial Court Cause No.
37C01-1805-JT-104

**Robb, Judge.**

# Case Summary and Issue

[1] B.S. ("Mother") appeals the juvenile court's termination of her parental rights to I.M. ("Child"), raising the sole issue of whether the trial court erred in terminating her parental rights. Concluding the juvenile court did not err, we affirm.

# Facts and Procedural History

[2] Child was born to Mother and F.M. ("Father") on December 9, 2016.[1] On August 23, 2017, the Indiana Department of Child Services ("DCS") received a report that Mother was homeless, Child's sibling A.M.[2] had not been enrolled in school, and Mother did not have proper food for then nine-month-old Child. DCS received a second report on September 1 alleging that Mother physically abused sibling A.M., slept excessively, suffered from depression, left Child and sibling A.M. unattended, and when the Children were left in the care of maternal grandmother, grandmother was neglectful and engaged in drug use. Mother tested positive for THC on September 6.

---

[1] Father's parental rights were also terminated. Father, however, does not participate in this appeal and we therefore limit our recitation of facts to those relevant to Mother.

[2] A.M., who was born May 5, 2010, was named in the underlying CHINS case but not alleged to be a CHINS. *See* Appellant's Appendix, Volume II at 7. She was eight years old at the time of the termination hearing and is reportedly autistic. However, A.M. is not mentioned in the termination decree provided for this appeal, nor by Mother in her brief, except to refer to her as "minor child's sibling[.]" Brief of Appellant at 7.

[3]     An informal adjustment was opened on September 21 wherein Mother agreed to work with DCS to complete services so as to "alleviate the reasons for involvement." Transcript at 45. Mother was arrested on October 9 following a traffic stop where she was found in possession of drug paraphernalia. While incarcerated, Mother informed DCS that Child was with Father but Child was eventually located with her aunt. The Children were removed on October 10 and DCS filed a child in need of services ("CHINS") petition on October 11, alleging:

> a. That the family entered into an Informal Adjustment with the DCS on or about September 21, 2017, and since that date [M]other tested positive for marijuana.
>
> b. That on or about October 10, 2017, Family Case Manager Holly Ammann ("FCM Ammann") learned that [M]other was incarcerated at the Newton County Jail. FCM Ammann went and spoke with [M]other at the Newton County Jail and [M]other informed her that she was pulled over for speeding and that she was arrested for possession of paraphernalia along with her mother and uncle.
>
> c. That when FCM Ammann asked [M]other where the [C]hild was [M]other was dishonest stating that the [C]hild was being watched by her [F]ather, DCS was eventually able to locate the [C]hild with [M]other's aunt.
>
> d. That the [C]hild's sibling [A.M.] has had five unexcused absences from school along with her being tardy eight times since school started on August 28, 2017.

e. That several attempts have been made to contact [F]ather but they have been unsuccessful. FCM Ammann has been in contact with his family and they indicated that he is currently homeless and rarely holds employment.

Appellant's App., Vol. II at 8.

[4] The juvenile court conducted an initial detention hearing on October 11 wherein Mother admitted to the allegations in the CHINS petition and the juvenile court adjudicated Child to be a CHINS. *See id.* at 11. The juvenile court determined that the removal of Child was authorized and necessary to protect Child. Following a dispositional hearing on November 6, the juvenile court imposed twenty-nine conditions upon Mother with the goal of reunification. *See id.* at 14-16.

[5] The juvenile court conducted a review hearing on April 2, 2018. Following the hearing, the juvenile court found, in relevant part:

> [Father] and [Mother] have not complied with the [C]hild's case plan. [M]other has been non-compliant with service providers and does not maintain contact with DCS. . . .

> [Father] and [Mother] have not enhanced their ability to fulfill their parental obligations. [M]other has been non-compliant with services. . . .

> [Father] and [Mother] have not visited the [C]hild. [M]other has only participated in 9.25 hours of the offered 55 hours of visitation with the [C]hild.

> [Father] and [Mother] have not cooperated with DCS.

*Id.* at 20.

[6] A permanency hearing was conducted on May 14. The juvenile court found that Mother had not complied with Child's case plan, failed to submit to regular random drug screens or participate in ordered services, and remained unemployed without housing for the children. *See id.* at 22. The juvenile court changed Child's permanency plan "to be placed for adoption." *Id.* at 23.

[7] DCS filed its petition for the involuntary termination of the parent-child relationship on May 17, 2018. The juvenile court held a factfinding hearing on July 11 and, after hearing the evidence, terminated Mother's parental rights through written findings of fact and conclusions of law issued on July 13. The juvenile court found, in relevant part:

> *There is a reasonable probability that the conditions that resulted in the [C]hild's removal or the reasons for the placement outside the parent's home will not be remedied in that:*
>
> a. Mother continued to test positive for illegal drugs throughout the CHINS case including THC and cocaine. Mother also tested positive for THC while currently pregnant.
>
> * * *
>
> c. Mother only met with her homemaker services worker once and had several no-call, no-shows to appointments. Mother still does not have appropriate housing and is still not employed.

d. Mother's first therapist was never able to start individual therapy over a two month period due to difficulty contacting [M]other despite calling, texting, and making visits to the home.

* * *

g. Mother was inconsistent with visitation, [M]other only attended five out of thirty-nine visitations, the last being in January of 2018.

h. Mother did not attend any counseling sessions after her initial intake and she failed to attend any intensive outpatient treatment sessions.

* * *

j. DCS tried to offer services through an Informal Adjustment but [M]other was arrested in Newton County for drug-related charges in October 2017.

k. That [M]other reported several different addresses in Illinois and Northwest Indiana during the CHINS case and was not in contact with DCS. DCS attempted to mail [M]other contact information in 2018 but was not successful.

* * *

m. Mother did not contact DCS from December 21, 2017, until March 18, 2018, except for at court appearances.

n. In March 2018 [M]other informed DCS by text that she was homeless, and paperwork could be sent to an address in East Chicago.

o. Mother admitted she continued to use drugs because her children were taken away and it was hard.

p. Mother never asked DCS to move services closer to her when she lived in East Chicago.

q. Mother [sic] relationship with the man she was living with after removal involved daily fighting where [M]other would leave and then return.

*There is a reasonable probability that continuation of the parent-child relationship poses a threat to the well-being of the [C]hild in that:*

a. Mother only met with her homemaker service provider to find housing and employment once and then no-called or no-showed the remainder of the appointments.

b. Mother's first therapist had great difficulty contacting [M]other despite numerous calls, texts, and visits to the home over a two month [sic] period and [M]other never began individual therapy.

* * *

e. That [M]other was inconsistent with visitation and only attended five out of thirty-nine visitations, the last of which was in January of 2018.

f. Mother never attended individual therapy or intensive outpatient drug treatment after the initial intake appointment.

* * *

h. Mother admitted she continued to use drugs because her children were taken away and it was hard.

* * *

*Termination is in the [C]hild's best interests of the [C]hild [sic] in that:*

* * *

d. Mother continues to maintain a lifestyle that necessitated the informal adjustment and then removal in 2017.

e. Mother who is currently pregnant, still continues to use illegal drugs.

f. Mother did not participate in any of the mental health services that were provided.

g. Mother does not have a stable residence and has lived with various people with no home of her own.

h. Mother's rate of attendance to as to [sic] visits is less than twenty percent.

i. Mother is not ready to address her problems as she testified it was all the other people around her in her life causing the problems.

*Id*. at 29-31 (emphasis added).  Mother now appeals.

# Discussion and Decision

# I. Standard of Review

[8] When reviewing the termination of parental rights, we do not reweigh the evidence or judge the credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Rather, we consider the evidence, and reasonable inferences therefrom, most favorable to the judgment, *id.*, and we will only set aside the court's judgment terminating a parent-child relationship when it is clearly erroneous, *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied*, 534 U.S. 1161 (2002)*.*

[9] As required by Indiana Code section 31-35-2-8(c), the juvenile court entered findings of fact and conclusions thereon when terminating Mother's parental rights. Accordingly, we apply a two-tiered standard of review. *Bester v. Lake Co. OFC*, 839 N.E.2d 143, 147 (Ind. 2005). We must first determine whether the evidence supports the findings; then we determine whether the findings support the judgment. *Id.* Findings will only be set aside if they are clearly erroneous and findings are clearly erroneous only "when the record contains no facts to support them either directly or by inference." *Yanoff v. Muncy,* 688 N.E.2d 1259, 1262 (Ind. 1997).

# II. Termination Order

[10] Mother challenges the termination of her parental rights to Child. A parent's interest in the care, custody, and control of his or her child is "perhaps the oldest of the fundamental liberty interests[,]" *Bester*, 839 N.E.2d at 147, and these rights are protected by the Fourteenth Amendment to the United States

Constitution, *In re D.D.*, 804 N.E.2d at 264. Although these rights are constitutionally protected, they are not without limitation and the law provides for the termination of the parent-child relationship when parents are unable or unwilling to meet their parental responsibilities. *In re R.H.*, 892 N.E.2d 144, 149 (Ind. Ct. App. 2008).

[11] To terminate Mother's parental rights, Indiana Code section 31-35-2-4(b)(2) requires DCS prove, in relevant part:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the foregoing elements by clear and convincing evidence. Ind. Code § 31-37-14-2; *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016). However,

because subsection (b)(2)(B) is written in the disjunctive the juvenile court need only find one of the three elements by clear and convincing evidence. *See Castro v. State Office of Family & Children*, 842 N.E.2d 367, 373 (Ind. Ct. App. 2006) (citation omitted), *trans. denied*.

[12] Mother challenges the juvenile court's conclusions that the conditions under which Child was removed would not be remedied, the continuation of the parent-child relationship posed a risk to Child, and termination was in the best interests of Child. Before proceeding to the merits of Mother's argument, however, we note that Mother does not specifically challenge any of the findings of fact and therefore we accept the juvenile court's findings as true. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992).

## A. Remedy of Conditions

[13] First, Mother argues DCS failed to prove by clear and convincing evidence that the conditions resulting in Child's removal will not be remedied. In *K.T.K. v. Ind. Dep't of Child Servs.*, our supreme court explained:

> We engage in a two-step analysis to determine whether the conditions that led to the [Child's] placement outside the home will not be remedied. First, we must ascertain what conditions led to [the] placement and retention in foster care. Second, we determine whether there is a reasonable probability that those conditions will not be remedied. In making these decisions, the trial court must consider a parent's habitual pattern of conduct to determine whether there is a substantial probability of future neglect or deprivation.

989 N.E.2d 1225, 1231 (Ind. 2013) (quotations and citations omitted). Habitual conduct may include criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment, but the services offered to the parent and the parent's response to those services can also be evidence demonstrating that conditions will be remedied. *A.D.S v. Indiana Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013), *trans. denied*.

[14] Since Mother has failed to specifically challenge any of the juvenile court's findings, we need only consider whether the findings support the juvenile court's conclusion. *See Bester*, 839 N.E.2d at 147. Here, Mother wholly failed to demonstrate that she was any closer to providing Child a safe, stable home than she was at the inception of the CHINS case. The record is littered with evidence of Mother's failure to engage with DCS, her refusal to participate in services, and her inability to combat her substance abuse issues. Indeed, FCM Ammann testified Mother made no progress regarding her substance abuse. *See* Tr. at 47. The juvenile court made extensive findings on this issue and we conclude those findings support its conclusion that the conditions resulting in Child's removal will not be remedied. *See, e.g., In re E.M.*, 4 N.E.3d 636, 644 (Ind. 2014) (findings regarding father's continued non-compliance with services supported juvenile court's conclusion the conditions under which children were removed from father's care would not be remedied).

[15] To the extent Mother argues that she recently attempted to engage in services, the juvenile court was well within its discretion to "disregard the efforts Mother

made only shortly before termination and to weigh more heavily Mother's history of conduct prior to those efforts." *In re K.T.K.*, 989 N.E.2d at 1234. And, to the extent Mother cites her own testimony as evidence that her failure to comply with services was outside of her control, we view her argument as nothing more than an invitation to reweigh the evidence, which we will not do. *See In re D.D.*, 804 N.E.2d at 265.

## B. Well-Being of Child

[16] Next, Mother contends DCS failed to present clear and convincing evidence that the continuation of the parent-child relationship poses a threat to Child's well-being. Having already concluded the juvenile court did not err in concluding that the conditions that led to Child's removal would not be remedied, we need not address this argument. *See Castro*, 842 N.E.2d at 373 (noting that Indiana Code 31-35-2-4(b)(2)(B) is written in the disjunctive and the juvenile court need only find one of the three elements by clear and convincing evidence). However, given the juvenile court's unchallenged findings in this regard, Mother's continued substance abuse issues, and Mother's lack of effort or success in overcoming those substance abuse issues, we nevertheless conclude the juvenile court did not err in concluding there was a reasonable probability that the continuation of the parent-child relationship poses a threat to Child's well-being. *See In re D.L.*, 814 N.E.2d 1022, 1029 (Ind. Ct. App. 2004) ("The inevitable conclusion is that when [mother] abuses drugs, she endangers her children in a variety of ways."), *trans denied*.

# C. Best Interests of Child

Finally, Mother argues the juvenile court erred in concluding that the termination of the parent-child relationship was in the best interests of Child.

In determining what is in the best interests of a child, the juvenile court is required "to look beyond the factors identified by [DCS] and to consider the totality of the evidence." *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). In so doing, the court must subordinate the interests of the parents to those of the children. *In re A.K.,* 755 N.E.2d 1090, 1097 (Ind. Ct. App. 2001). The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). Moreover, the testimony of service providers may support a finding that termination is in the child's best interests. *Id*. at 203.

Once again, Mother has failed to challenge any of the juvenile court's findings of fact on this issue and thus we need only determine whether those findings support the juvenile court's conclusion. We conclude that they do. In addition to Mother's substance abuse issues that necessitated DCS involvement and her complete lack of progress since then, FCM Ammann testified that terminating Mother's parental rights would serve the best interests of Child. *See* Tr. at 53. Therefore, we conclude Mother has failed to demonstrate the juvenile court's conclusion regarding the best interests of Child was clearly erroneous.

# Conclusion

[20] For the reasons set forth above, we conclude the juvenile court's decision to terminate Mother's parental rights was not clearly erroneous. We affirm accordingly.

[21] Affirmed.

Riley, J., and Kirsch, J., concur.